UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| CAGDAS KESKIN,<br><br>　　　　　　　Petitioner,<br><br>　　v.<br><br>PAMELA BONDI, Attorney General of the United States, et al.,<br><br>　　　　　　　Respondents. | CASE NO. 2:25-cv-02737-TL<br><br>ORDER ON PETITION FOR WRIT OF HABEAS CORPUS |

　　　This matter is before the Court on Petitioner Cagdas Keskin's Petition for Writ of Habeas Corpus. Dkt. No. 6. Respondents are Pamela Bondi, United States Attorney General; Kristi Noem, Secretary, United States Department of Homeland Security ("DHS"); Laura Hermosillo, Acting Seattle Field Office Director, Enforcement and Removal Operations ("ERO"), United States Immigration and Customs Enforcement ("ICE"); Bruce Scott, Warden, Northwest ICE Processing Center ("NWIPC"); and ICE. Petitioner, who is presently detained at the Northwest Immigration and Custom Enforcement Processing Center (*id*. at 2), seeks: (1) his release from custody; (2) an order that prevents his re-detention without a hearing before a neutral decision

maker; (3) an order that prevents his removal to a third country without notice and a meaningful opportunity to respond; and (4) an order that prevents his removal to a third country on the basis that such removal represents unconstitutional punishment (*id*. at 3–4). Having reviewed the Petition, Respondents' Return[1] (Dkt. No. 9), and Petitioner's Reply (Dkt. No. 12), the Court GRANTS the Petition.

## I.    BACKGROUND

Petitioner is a citizen of Turkey (Türkiye) and is of Kurdish origin. Dkt. No. 6 at 5. Petitioner came to the United States seeking asylum due to ethnic persecution in his home country. *Id*. On October 18, 2024, Petitioner entered the United States from Mexico without inspection. Dkt. No. 9 at 7. After entering the United States, Petitioner surrendered to immigration authorities and was sent to detention facilities in Arizona and Mississippi before arriving at the NWIPC. Dkt. No. 6 at 5. On February 10, 2025, DHS issued a Notice to Appear ("NTA"), charging Petitioner as inadmissible under Sections 212(a)(6)(A)(i) and 212(a)(7)(A)(i)(I) on the Immigration and Nationality Act ("INA") and therefore subject to removal from the United States. Dkt. No. 11-2 (NTA) at 2. Dkt. No. 9 at 15. On May 30, 2025, an Immigration Judge ("IJ") ordered Petitioner removed, but granted withholding from removal to Turkey under INA. § 241(b)(3). Dkt. No. 11-3 (Order of the Immigration Judge) at 2. Petitioner reserved appeal of the IJ's order (*id.* at 5) but did not file an appeal (Dkt. No. 6 at 3). Therefore, his removal order became final on June 30, 2025. *See* Dkt. No. 11-3 at 5; 8 C.F.R. § 1241.1(c). At the time the habeas petition was filed on January 6, 2026, Petitioner had

---

[1] As used in this order, the term "Respondents" includes all Respondents except Respondent Scott. Respondent Scott has not responded to the habeas petition and has not appeared in this case.

ORDER ON PETITION FOR WRIT OF HABEAS CORPUS - 2

been in detention for fourteen months, including six months and one week after his removal order become final. *See* Dkt. No. 9 at 3.[2]

## II.   LEGAL STANDARD

"Writs of habeas corpus may be granted by . . . the district courts . . . within their respective jurisdictions." 28 U.S.C. § 2241(a). Habeas petitioners must prove by the preponderance of the evidence that they are "in custody in violation of the Constitution or laws or treaties of the United States." *Davis v. Woodford*, 384 F.3d 628, 638 (9th Cir. 2004) (quoting 28 U.S.C. § 2241(c)).

Under the Due Process Clause of the Fifth Amendment to the United States Constitution, no person shall be "deprived of life, liberty, or property, without due process of law . . . ." U.S. Const. amend. V. The Fifth Amendment guarantee of due process applies in removal proceedings. *Torres-Aguilar v. I.N.S.*, 246 F.3d 1267, 1270 (9th Cir. 2001). In addition, the Supreme Court has held that "the Due Process Clause protects [a noncitizen] subject to a final order of deportation . . . ." *Zadvydas v. Davis*, 533 U.S. 678, 693–94 (2001) (citing *Wong Wing v. United States*, 163 U.S. 228, 238 (1896)); *see also Demore v. Kim*, 538 U.S. 510, 523 (2003) (recognizing that Fifth Amendment due process protections extend to removal proceedings but noting that "detention during deportation proceedings [is] a constitutionally valid aspect of the deportation process.").

## III.   DISCUSSION

Petitioner seeks a writ of habeas corpus on three grounds: (1) Petitioner's continued detention in immigration custody violates the due process clause of the Fifth Amendment (Dkt.

---

[2] Where necessary for analysis under *Zadvydas v. Davis*, 533 U.S. 678, 693–94 (2001), the Court will refer to the length of Petitioner's detention as of the date the petition was formally filed. Otherwise, the Court will refer to his time in detention as of the date of this Order.

ORDER ON PETITION FOR WRIT OF HABEAS CORPUS - 3

No. 6 at 14); (2) Respondents' third-country removal policy violates the Fifth Amendment, the Immigration and Nationality Act ("INA"), the Convention Against Torture, the Administrative Procedure Act ("APA"), and regulatory requirements (*id*. at 15); and (3) Respondents' third-country removal policy violates the Fifth and Eighth Amendments (*id.* at 16). The Court will address these in turn.

**A.     Ground One: Petitioner's Continued Detention**

**1.     Legal Framework for Detention Under the INA**

As a noncitizen with a final order of removal, Petitioner is detained under 8 U.S.C. § 1231. Under Section 1231(a)(1), "when [a noncitizen] is ordered removed, the Attorney General shall remove the [noncitizen] from the United States within a period of 90 days (in this section referred to as the 'removal period')." 8 U.S.C. § 1231(a)(1). Section 1231(a)(2) mandates the detention of the noncitizen during the removal period. *Id.* § 1231(a)(2). Finally, Section 1236(a)(6) authorizes the continued detention of noncitizens after the expiration of the removal period:

> [A noncitizen] ordered removed who is inadmissible under section 1182, removable under section 1227(a)(1)(C), 1227(a)(2), or 1227(a)(4) of this title or who has been determined by [the Secretary of Homeland Security][3] to be a risk to the community or unlikely to comply with the order of removal, may be detained beyond the removal period and, if released, shall be subject to the terms of supervision in paragraph (3).

8 U.S.C. § 1231(a)(6).

Although there is no temporal limit on the length of detention in the statute, the Supreme Court observed in *Zadvydas* that "Congress enacted the present law, which liberalizes pre-

---

[3] Although 8 U.S.C. § 1231 refers to "the Attorney General" as having responsibility for detention and removal of noncitizens, the Homeland Security Act of 2002, Pub. L. No. 107-296 § 441(2), 116 Stat. 2135, 2192 (2002), transferred this authority to the Secretary of the Department of Homeland Security. *See also* 6 U.S.C. § 251.

existing law by shortening the removal period from six months to 90 days, mandat[ing] detention of certain criminal [noncitizens] during the removal proceedings and for the subsequent 90-day removal period . . . ." The Supreme Court reasoned:

> While an argument can be made for confining any presumption to 90 days, we doubt that when Congress shortened the removal period to 90 days in 1996 it believed that all reasonably foreseeable removals could be accomplished in that time. We do have reason to believe, however, that Congress previously doubted the constitutionality of detention for more than six months."

*Zadvydas*, 533 U.S. at 701 (citing Juris. Statement in *United States v. Witkovich,* O.T. 1956, No. 295, at 8–9.)

The *Zadvydas* Court held that the INA does not authorize "indefinite, perhaps permanent, detention" of noncitizens subject to final orders of removal under Section 1231(a)(6), *id.* at 699, instead construing the statute to contain an "implicit 'reasonable time' limitation," *id.* at 682. "[F]or the sake of uniform administration in the federal courts," the Supreme Court recognized six months as that time limitation. *Id.* at 701. It found that if a statute were to permit indefinite detention of a noncitizen, that would "raise a serious constitutional problem" under the Fifth Amendment's Due Process Clause. *Id*. at 690. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that Clause protects." *Id*.

Ultimately, the Supreme Court determined that it is "presumptively reasonable" for DHS to detain a noncitizen for six months following entry of a final removal order while it works to remove the individual from the United States. *Id.* at 701. However, "[a]fter this 6-month period, once the [noncitizen] provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence

ORDER ON PETITION FOR WRIT OF HABEAS CORPUS - 5

sufficient to rebut that showing." *Id.* If the Government fails to rebut the noncitizen's showing, the noncitizen is entitled to habeas relief. *Id.*

2.  **Petitioner's Circumstances**

    a.  **Presumptively Reasonable Period of Detention**

The six-month presumption "does not mean that every [noncitizen] not removed must be released after six months. To the contrary, [a noncitizen] may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future." *Id.* at 701. Nevertheless, "for detention to remain reasonable, as the prior period of postremoval confinement grows, what counts as the 'reasonably foreseeable future' conversely would have to shrink." *Id.*

In the present case, Petitioner's removal order became final on June 30, 2025, meaning he has been detained over seven months since his removal order became final (six months and one week on the date his petition was filed). Respondents do not contest the length of Petitioner's detention, or that it exceeds the presumptively reasonable six-month period. Therefore, the Court finds that Petitioner has been detained past the presumptively reasonable period.

    b.  **Significant Likelihood of Removal in the Reasonably Foreseeable Future**

Petitioner also satisfies his burden under *Zadvydas* to show that no significant likelihood of removal in the reasonably foreseeable future exists here. Petitioner asserts, and Respondents agree, that the IJ granted withholding of removal. Dkt. No. 6 at 5; Dkt. No. 9 at 7. Courts routinely find that noncitizens under such circumstances have met their initial burden under *Zadvydas*. *See, e.g.*, *Shadalo v. Mattos*, No. C25-2076, 2025 WL 3568234, at *6 (D. Nev. Dec. 14, 2025); *Vishal v. Chestnut*, No. C25-1469, 2025 WL 3511815, at *3 (E.D. Cal. Dec. 8, 2025);

*Gomez v. Mattos*, No. C25-975, 2025 WL 3101994, at *5 (D. Nev. Nov. 6, 2025); *Hmung v. Bondi*, No. C25-1303, 2025 WL 3657221, at *3 (W.D. Okla. Dec. 9, 2025), *report and recommendation adopted,* 2025 WL 3670499 (Dec. 17, 2025); *Sukhyani v. Bondi*, No. C25-1243 (W.D. Okla. Nov. 18, 2025), *report and recommendation adopted*, 2025 WL 3283274 (Nov. 25, 2025); *Trejo v. Warden of ERO El Paso East Mont.*, No. C25-401, 2025 WL 2992187, at *5 (W.D. Tex. Oct. 24, 2025); *Misirbekov v. Venegas*, No. C25-168, 2025 WL 2450991, *1 (S.D. Tex. Aug. 15, 2025); *see also Nadarajah v. Gonzales*, 443 F.3d 1069, 1081 (9th Cir. 2006) (recognizing that a grant of withholding of removal under the Convention Against Torture to a noncitizen "is a powerful indication of the improbability of his foreseeable removal, by any objective measure").

           **c.**      **Respondents' Rebuttal**

Respondents hold the burden of rebutting Petitioner's showing that there is no significant likelihood of removal in the reasonably foreseeable future. Respondents must "respond with evidence sufficient to rebut that showing." *Nguyen v. Scott*, 796 F. Supp. 3d 703, 723 (W.D. Wash. 2025) (quoting *Zadvydas*, 533 U.S. at 701). Here, Respondents make no such showing. In fact, Respondents do not raise any argument in response to Petitioner's due process challenge to his detention at all, instead offering a boilerplate response to a claim Petitioner has not asserted under the Administrative Procedure Act.[4] *See* Dkt. No. 9, Section III.A; *see generally id*. Having offered neither evidence nor argument that there is a significant likelihood of removal in the reasonably foreseeable future, Respondents fail to carry their burden to rebut Petitioner's showing that it is not.

---

[4] Petitioner alleges that his third-country removal would violate the APA (Dkt. No. 6 at 15, but never that his detention does (*see generally id.*).

Accordingly, pursuant to *Zadvydas*, Petitioner has demonstrated that his continued detention is unlawful. A writ of habeas corpus is thus warranted with respect to Petitioner's ongoing detention.

**B.      Ground Two and Three: Third Country Removal**

Petitioner also makes requests of the Court related to his beliefs regarding the process of removal to a third country. First, Petitioner requests that the Court "Order that Respondents may not remove or seek to remove Petitioner to a third country without notice and meaningful opportunity to respond in compliance with the [INA] and due process in reopened removal proceedings." Dkt. No. 6 at 18. Next, Petitioner requests that the Court "Order that Respondents may not remove Petitioner to any third country because Respondents' third-country removal program seeks to impose unconstitutional punishment on its subjects, including imprisonment and other forms of harm." *Id*. Respondents raise two arguments in defense: (1) Petitioner cannot obtain relief from this Court because he is a member of the plaintiff class in *D.V.D. v. Department of Homeland Security,* No. C25-10676 (D. Mass.) (Dkt. No. 9 at 19-20); and (2) Petitioner's claim regarding fear of removal to a third country is already protected under existing DHS policy (*id.* at 18–19).[5] The Court will address each argument in turn.

**1.      Respondent's *D.V.D.* Arguments Fail**

Respondents contend that Petitioner cannot obtain relief because he is a member of the plaintiff class in *D.V.D. v. Department of Homeland Security,* No. C25-10676 (D. Mass.). Dkt.

---

[5] Respondents also argue that Petitioner's Administrative Procedures Act claim must be dismissed for lack of subject matter jurisdiction. Dkt. No. 9 at 16. First, this argument responds only to Petitioner's claim regarding notice of prospective removal to a third country, not to the claim that detention is unlawful. Second, it does not address jurisdiction as to the other bases for which Petitioner raises the argument of notice and opportunity to respond, which include the Fifth Amendment, INA, and CAT. Dkt. No. 6 at 16. Lastly, Respondents make no argument that the Court lacks jurisdiction under the other bases Petitioner raises relating to the notice and opportunity to respond issue. The Court finds it does have jurisdiction pursuant to Fifth Amendment, INA, and CAT. Therefore, the court declines to do an analysis on whether it has jurisdiction pursuant to the APA.

1  No. 9 at 19. In *D.V.D.*, the district court certified a class of noncitizen petitioners and enjoined
2  the Government from removing them to third countries unless specific conditions were met. 778
3  F. Supp. 3d 355, 392–93 (D. Mass. 2025). It found that the petitioners were likely to show that
4  "[d]efendants have a policy or practice of executing third-country removals without providing
5  notice and a meaningful opportunity to present fear-based claims." Thus, it found the
6  Government's third-country removal policy or practice likely violates procedural due process. *Id*.
7  at 387. The Government appealed the injunction, and the Supreme Court eventually stayed that
8  injunction in an unexplained, emergency-docket order. *D.V.D.*, 145 S. Ct. 2153 (2025).

9        Here, Respondents argue that, under Ninth Circuit precedent, a class member like
10 Petitioner cannot request the same relief in a separate action. Dkt. No. 9 at 19–20 (citing *Pride v.*
11 *Correa*, 719 F.3d 1130, 1133 (9th Cir. 2013)). This Court, along with others in this District, has
12 already rejected that argument and found that, under these circumstances, Ninth Circuit
13 precedent permits Petitioner to seek individual relief, and Respondents' reliance on *Pride v.*
14 *Correa* is misplaced. *See, e.g.*, *Elshourbagy v. Bondi*, No. C25-2432, 2025 WL 3718993, at *7
15 (W.D. Wash. Dec. 23, 2025) (Lin, J.); *Arenado-Borges v. Bondi*, No. C25-2193, 2025 WL
16 3687518, at *5–6 (W.D. Wash. Dec. 19, 2025); *Baltodano v. Bondi*, No. C25-1958, 2025 WL
17 3484769, at *3 (W.D. Wash. Dec. 4, 2025); *Abubaka v. Bondi*, No. C25-1889, 2025 WL
18 3204369, at *2 (W.D. Wash. Nov. 17, 2025); *Nguyen v. Scott*, 796 F. Supp. 3d at 729–732.

19       As it did in *Elshourbagy*, this Court adopts the *Nguyen* court's detailed and thoughtful
20 analysis of this issue and the *Nguyen* court's findings that (1) "The class certification order in
21 *D.V.D.* does not prevent this Court from adjudicating Petitioner's claims regarding third-country
22 removal," and (2) absent "clear guidance from the Supreme Court," which the emergency docket
23 order in *D.V.D.* does not provide, this Court must follow well-established precedent. *Nguyen v.*
24 *Scott*, 796 F. Supp. 3d at 729–32.

### 2. Respondents' Reliance on Existing DHS Policy Fails

Petitioner presents the Court with an overview of the legal framework governing the countries to which a noncitizen may be removed, and under what circumstances. *See* Dkt. No. 6 at 7–13. Removal to a third country is permissible *only* if it is "impracticable, inadvisable, or impossible" to remove a noncitizen to (a) the country the noncitizen has designated for removal; (b) the country of which the noncitizen is a subject, national, or citizen; (c) the country from which the individual was admitted to the United States, or which contains the port from which they disembarked for the United States or a contiguous territory; or (d) the non-citizen's country of birth (or the country that now contains their birthplace) or immediate previous residence may the government remove the noncitizen to "another country whose government will accept [them] into that country." *Id.* at 8–9 (citing 8 U.S.C. § 1231(b)(2)(E)). Even then, the government may not remove any person to a country where they will be persecuted or tortured. *Id.* at 9 (citing 8 U.S.C. § 1231(b)(3)(A); 8 C.F.R. §§ 208.16, 1208.16). Where third-country removal is anticipated, due process requires, *inter alia*, notice of the country to which the noncitizen will be removed that is not be provided "last minute," but with sufficient time that the noncitizen has a meaningful opportunity to apply for fear-based protection from removal. *Andriasian v. INS*, 180 F.3d 1033, 1041 (9th Cir. 1999). Courts in this District have found, and this Court agrees, that such notice must consist of "written notice of the country being designated" and "the statutory basis for the designation, i.e., the applicable subsection of § 1231(b)(2)," and that the noncitizen must be affirmatively asked whether they fear persecution or harm upon removal to the third country, with their response memorialized in writing. *Aden v. Nielsen*, 409 F. Supp. 3d 998, 1019 (W.D. Wash. 2019).

If a noncitizen claims fear of removal to a designated third country, courts in this District have repeatedly held that ICE must give the petitioner an opportunity "to pursue [a] claim for

ORDER ON PETITION FOR WRIT OF HABEAS CORPUS - 10

withholding of deportation in reopened removal proceedings before an immigration judge." *Abubaka*, 2025 WL 3204369, at *6; *see Arenado-Borges*, 2025 WL 3687518, at *6 (collecting cases). These district court cases are not binding, but Respondents offer no reason the Court should not follow them. The Court finds the reasoning in *Aden* and the other cases cited above persuasive and concludes that constitutionally and statutorily compliant notice requires that, before Petitioner may be removed to a third country, he must be given an opportunity to respond, and—if he has a fear of persecution or torture—reopened removal proceedings before an Immigration Judge.

Here, ERO interviewed Petitioner on September 25, 2025, about third country options (Dkt. No. 10 (Hubbard Decl.) ¶ 13)), and Petitioner informed ERO that he doesn't have other options and does not want to be removed to any other country (*id*.). Respondents assert that "Petitioner's claim of fear of removal to a third country is already protected under existing DHS policy."[6] Dkt. No. 9 at 18. While much ink has been spilled discussing how the current DHS policy works and why, those procedures have repeatedly been held to fall far short of what courts in this District and Circuit have held is required by due process. *See, e.g.*, *Rea-Hernandez v. Bondi*, No. C25-2609, 2026 WL 322874, at *9 (W.D. Wash. Feb. 6, 2026) ("Alarmingly, this policy provides that "[i]f the United States has received diplomatic assurances from the country of removal that [noncitizens] removed from the United States will not be persecuted or tortured, and if the Department of State believes those assurances to be credible, the [noncitizen] may be removed *without the need for further procedures*."); *Francisco Lorenzo v. Bondi*, No. C25-2660, 2026 WL 237501, at *9–10 (W.D. Wash. Jan. 29, 2026) (finding that Respondents' third-country

---

[6] The DHS Policy refers to a March 30, 2025, DHS memo titled "Guidance Regarding Third Country Removals," and a June 23, 2025 ICE memo titled "Third Country Removals Following the Supreme Court's Order in Department of Homeland Security v. D.V.D., No. 24A1153 (U.S. June 23, 2025)." Dkt. No. 9 at 14.

removal policy, as described in the July 9, 2025, memorandum, "simply do[es] not comport with due process"); *Escobar v. Chestnut*, No. C25-1801, 2025 WL 3687639, at *4 (E.D. Cal. Dec. 19, 2025) ("Courts across this circuit have found that ICE's policy, as described in the March and July Memoranda, is likely unconstitutional and contrary to Ninth Circuit precedent." (collecting cases)). The Court will not spill more ink repeating those reasons here except to reiterate that the widely circulated DHS policy does not inspire confidence that Respondents can be relied upon to afford Petitioner with a statutorily and constitutionally sufficient process absent an order from this Court.

A plaintiff or petitioner "seeking a permanent injunction must demonstrate (1) that he has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006). Petitioner meets this standard. He has shown that he suffered irreparable injuries for which monetary damages are likely unavailable or inadequate to compensate him: his unlawful detention and violation of his due process rights. *See Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) ("It is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'" (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976))). Petitioner is likely to suffer that injury again if Respondents attempt to remove him to a third country without the protections required by the Due Process clause, and he is likely to suffer even graver injury if a constitutionally deficient removal is effectuated. *See A.A.R.P. v. Trump*, 605 U.S. 91, 94 (2025) (detainees with pending habeas petitions facing removal under Alien Enemies Act faced "an imminent threat of severe, irreparable harm"). Were Petitioner to be "removed from the United States to the custody of a foreign sovereign . . . the Government

[might] argue[], as it has previously argued, that no U.S. court ha[s] jurisdiction to order relief." *Id.* at 93. That is, the legal remedies by which Petitioner might redress this harm would be substantially diminished, if not extinguished entirely. In light of such serious harm to Petitioner, the balance of equities tips steeply in his favor, because his interest in avoiding the unlawful deprivation of his liberty outweighs the minimal burden on Respondents of providing notice and an opportunity to be heard if they wish to remove him. Finally, "it is always in the public interest to prevent the violation of a party's constitutional rights." *Riley's Am. Heritage Farms v. Elsasser*, 32 F.4th 707, 731 (9th Cir. 2022) (citation modified). Under these circumstances, injunctive relief is appropriate.

Because Petitioner has demonstrated that injunctive relief is warranted, the Court will grant Petitioner's request to "[o]rder that Respondents may not remove or seek to remove Petitioner to a third country without notice and meaningful opportunity to respond in compliance with the statute and due process in reopened removal proceedings." Dkt. No. 6 at 18.

### 3. Fifth and Eighth Amendments

In addition to the procedural concerns discussed above, Petitioner further alleges that his potential third-country removal pursuant to Respondents' current policy would violate the Eighth Amendment's prohibition of cruel and unusual punishment, the Fifth Amendment's prohibition of extrajudicial punishment, and the long-established rule, dating to *Wong Wing v. United States*, 163 U.S. 228, 237–38 (1896), that no "infamous punishment" in addition to deportation may be imposed for immigration violations without a proper criminal trial. Dkt. No. 6 at 16.

In support of this argument, Plaintiff asserts that it has been reported that Respondents have "attempted—and completed—an 'end-run' around the protections of the Convention Against Torture by deporting a group of migrants to Ghana, which sent them on to their countries of citizenship despite fears of persecution." Dkt. No. 6 at 11. Petitioner alleges that the

ORDER ON PETITION FOR WRIT OF HABEAS CORPUS - 13

Trump administration has hand-picked countries known for human rights abuses and instability for its deportations, in an attempt to spread fear and deter immigration, and that hundreds of noncitizens have been removed to third countries only to be met with mistreatment and summary, sometimes indefinite, detention. *Id.* at 12. While the Court notes that Petitioner does not substantiate these allegations, it notes also that Respondents do not deny them, and that "courts in this district and across the country have recognized that Petitioner is correct: the government is intentionally removing individuals to countries where they will be imprisoned." *Nguyen v. Bondi*, 2025 WL 3534168, at *9 (citing *Nguyen v. Scott*, 796 F. Supp. 3d at 734 (collecting cases)).

In this particular case, faced with the particular pleadings before it, the Court does not have sufficient basis for a finding that Respondents' third-country removal program is unconstitutional as a whole, or that third-country removal would be punitive as applied to Petitioner specifically. Cases in this District in which courts *have* found as much, "which were specific to a particular population and particular destination countries, do not extend to these circumstances." *Arenado-Borges*, 2025 WL 3687518, at *7 (citing *Nguyen*, 796 F. Supp. 3d at 734; *Abubaka*; 2025 WL 3204369, at *8.)

On this record, the Court cannot find that Petitioner's removal to a third country would constitute unconstitutional punishment. The request is DENIED without prejudice.

**C.   Procedural Due Process and Re-Detention**

Petitioner requests that the Court "Order that Respondents may not re-detain Petitioner without first holding a hearing before a neutral decisionmaker at which the government bears the burden of establishing flight risk or danger to the community by clear and convincing evidence based on changed circumstances since Petitioner was previously released". Dkt. No. 6 at 17. However, Petitioner neither raises this as a ground for relief nor provides any briefing to support

the request in his Petition. *See generally* Dkt, No. 6. Respondents, however, still responds to this request. On reply, Petitioner asserts that arbitrary re-detention is a possibility and clarifies that he is not asking for a premature ruling on future conduct but a prohibition on the direct violation of this Court's order releasing him absent some intervening change in circumstances. Dkt. No. 12 at 4–5.

Because the Court has determined that there is no significant likelihood of removal in the reasonably foreseeable future, Petitioner will be released on an Order of Supervision (OSUP). *See* 8 C.F.R. § 241.13(h). Respondents notes that "Revocation of an OSUP is governed by 8 C.F.R. §§ 241.13(i), 241.4(l), and may occur either: (1) if the noncitizen 'violates any of the conditions of release,' *id.* §§ 241.13(i)(1), 241.4(l)(1); or (2) if it is determined 'that there is a significant likelihood that the [noncitizen] may be removed in the reasonably foreseeable future. *Id.* § 241.13(i)(2).'" Dkt. No. 9 at 9. If, after release, circumstances change and Petitioner's removal becomes reasonably foreseeable, Respondents might legally re-detain him for the purposes of removing him and would not be required to establish that he poses a danger or risk of flight. But the injunction Petitioner seeks would prevent even *lawful* detention in furtherance of Petitioner's removal. This would be an extraordinary remedy, and Petitioner has not made the required showing for such relief. In addition, the Court will not rule on an issue (arbitrary re-detention) that is raised for the first time in a reply brief.[7] *See Zamani v. Carnes*, 491 F.3d 990, 997 (9th Cir. 2007) (citing *Koerner v. Grigas*, 328 F.3d 1039, 1048 (9th Cir. 2003) (affirming district court after it declined to consider an argument raised for the first time in reply)).

---

[7] It is, however, a sad state we are in that Petitioner finds it necessary to ask the Court to essentially order Respondents to follow the law. Yet Petitioner is not alone in his concern that Respondents are not doing so. *See Sanchez-Alfonso v. Bondi*, No. C25-2748, 2026 WL 395326, at *6 (W.D. Wash. Feb. 12, 2026) (in granting habeas petition, finding that Respondents' compliance with the procedures set forth in 8 C.F.R. § 241.13(i)(3) to be "a performative process at best and a sham process at worst.").

Therefore, Petitioner's request that "Respondents may not re-detain Petitioner without first holding a hearing before a neutral decisionmaker at which the government bears the burden of establishing flight risk or danger to the community by clear and convincing evidence based on changed circumstances since Petitioner was previously released" (Dkt. No. 6 at 17) is denied.

## IV.   CONCLUSION

Accordingly, Petitioner's petition for writ of habeas corpus (Dkt. No. 6) is GRANTED. It is hereby ORDERED:

(1) Respondents and all their officers, agents, employees, attorneys, and persons acting on their behalf or in concert with them:

    (a) SHALL release Petitioner from detention no later than 5:00 p.m. on **February 14, 2026**, under appropriate conditions of release;

    (b) SHALL NOT remove or seek to remove Petitioner to a third country without affording him meaningful notice and an opportunity to be heard in conformity with 8 U.S.C. § 1231(b) and due process;

    (c) SHALL, no later than 12:00 p.m. on February 17, 2026, provide the Court with a declaration confirming that Petitioner has been released from custody and informing the Court of the date and time of his release.

(2) Petitioner's request for an order prohibiting third-country removal as unconstitutionally punitive is DENIED. This denial is without prejudice to Petitioner's ability to challenge future third-country removal attempts, if appropriate.

//

//

//

ORDER ON PETITION FOR WRIT OF HABEAS CORPUS - 16

(3) Petitioner's request for injunctive relief regarding any future re-detention is DENIED. This denial is without prejudice to Petitioner's ability to challenge any future re-detention or to seek related injunctive relief, if appropriate.

Dated this 13th day of February, 2026.

Tana Lin
United States District Judge